J-A19027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.O.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 485 EDA 2021 |

Appeal from the Decree Entered February 11, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-AP-0000296-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 486 EDA 2021 |

Appeal from the Order Entered February 11, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0001615-2017

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:              **FILED OCTOBER 8, 2021**

D.M. (Father) appeals from the decree terminating his parental rights to

his son, S.O.A. a/k/a S.A. (Child), born in December 2010, and the order

_____

[*] Retired Senior Judge assigned to the Superior Court.

changing Child's permanency goal from reunification to adoption.[1] In addition, Father's court-appointed counsel (Counsel), seeks to withdraw from representation pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Upon review, we grant counsel's petition, affirm the decree, and dismiss the appeal from the goal change order as moot.

In June 2017, when Child was six years old and residing with Father and Mother was incarcerated, he was placed in the protective custody of the Philadelphia Department of Human Services (DHS), after a school nurse found "several lacerations and bruises on his back, stomach, and thighs." N.T., 1/6/21, at 17; N.T., 2/11/21, at 9. Child's injuries required medical attention. N.T., 2/11/21, at 9. The court placed Child in shelter care on June 19, 2017. On June 27, 2017, following a hearing, the court adjudicated Child dependent, and established reunification as the permanency goal.

Mother was subsequently released from prison, although the exact date of her release is not in the record. In March 2018, the court placed Child with Mother. N.T., 1/6/21, at 17; N.T., 2/11/21, at 10. Child remained with Mother for approximately three months, until June of 2018, when Child returned to

___

[1] The court also terminated the parental rights of S.A. (Mother) and the unknown putative father. Neither has appealed.

- 2 -

the physical custody of DHS due to Mother becoming homeless and Child not attending school. N.T., 1/6/21, at 17-18.

From the inception of this case and in furtherance of reunification, the court directed Father to comply with single case plan (SCP) objectives, and held regular permanency review hearings. One of Father's objectives was to participate in supervised visitation with Child. N.T., 2/11/21, at 14. Father visited with Child up until fall of 2017, but has not visited Child since. *Id.* Father was also required to obtain employment and appropriate housing. *Id.* at 10. Father never provided documentation demonstrating he was employed, and although he provided a mailing address, he never provided his physical address. *Id.* at 10-11. Finally, Father was required to participate in parenting and anger management programs. *Id.* at 12-13. The Community Umbrella Agency (CUA) caseworker made referrals to agencies to assist Father in meeting his parenting and anger management objectives, but Father did not achieve those goals. *Id.* at 12-13, 15.

On September 1, 2020, DHS filed a petition for involuntary termination of Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), as well as a petition for goal change to adoption. A hearing convened on January 6, 2021. Father appeared, but Counsel was unavailable, and the hearing proceeded as to Mother only. DHS presented testimony from Michelle Jackson, the family's CUA caseworker since Child's placement in June of 2017. Emily Cherniack, Esquire, represented

Child's legal interests, and Lindsay Palmer Demas, Esquire, represented Child's best interests.

The hearing was continued to February 11, 2021, when the court incorporated into the record the notes of testimony from the January 6, 2021 hearing. N.T., 2/11/21, at 8. Although represented by counsel, Father — without explanation of record — did not appear or present evidence.[2] Child was represented by the same attorneys who represented his legal and best interests at the January 6, 2021 hearing. DHS again presented testimony from Ms. Jackson, the CUA worker.

On February 11, 2021, the court issued the decree involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court also issued a permanency review order changing Child's permanency goal from reunification to adoption. On March 4, 2021, Father timely filed a notice of appeal from the involuntary termination decree on Child's adoption docket, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father likewise filed a notice of appeal from the goal change order on Child's dependency docket, along with a concise statement of errors complained of

_____

[2] At the prior hearing, the court asked Father "is 2/11 at 2:30 a good --" and Father replied, "Anytime is perfect for my child." N.T., 1/6/21, at 13. The court then confirmed the February 11th date was "a good date for Father's counsel," and Father said, "Yeah, Judge. Thank you." *Id.* at 15.

on appeal.[3]   On April 28, 2021, this Court granted Father's request to consolidate the two appeals.

On May 25, 2021, Counsel filed a petition with this Court requesting to withdraw from representation, and submitted a brief pursuant to ***Anders*** and ***Santiago***.  We begin by reviewing Counsel's request.  ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting ***Commonwealth v. Smith***, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

This Court "extended the ***Anders*** principles to appeals involving the termination of parental rights." ***In re X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to ***Anders***, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009)).  With respect to the third requirement of ***Anders***, that counsel inform

---

[3] On April 6, 2021, this Court directed the trial court to correct the permanency order to clarify the goal change to adoption.  The court filed an amended order, after which Counsel requested permission to file an amended notice of appeal, which this Court granted and Counsel filed.

the appellant of his or her rights in light of counsel's withdrawal, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

> Additionally, an *Anders* brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Instantly, Counsel filed a petition to withdraw certifying his review and determination that Father's appeal is frivolous. Counsel also filed a brief which includes a summary of the history and facts of the case, the issues raised by Father, the facts that arguably support the appeal, and Counsel's assessment of why the appeal is frivolous, with citations to relevant legal authority. Finally, Counsel attached to his petition a letter he sent to Father pursuant to

***Millisock***, ***supra***.[4]   Therefore, Counsel complied with the requirements of ***Anders*** and ***Santiago***.

We next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Counsel's ***Anders*** brief raises the following issues:

1. Whether there is anything in the record that might arguably support the appeal that obviates a conclusion that the appeal is frivolous?

2. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(1)?

3. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(2)?

4. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(5)?

5. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(a)(8)?

6. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. § 2511(b)?

7. Whether the trial court erred by changing the goal to adoption?

***Anders*** Brief at 5 (unnecessary capitalization omitted).

---

[4] On June 14, 2021, we ordered Counsel to file copies of an amended letter he addressed and mailed to Father advising him of his right to raise additional issues with this Court.  Counsel complied on June 16, 2021 by filing the requisite number of copies of the amended letter.  Father has not filed a response.

Initially, we recognize:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *See In re B.L.W.*,

843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, we address termination under Section 2511(a)(1) and (b), which provide:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> . . .
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A § 2511(a)(1), (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006)).

We have explained that a parent does not perform his parental duties by displaying a "merely passive interest in the development of the child." **In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting **In re C.M.S.**, 832 A.2d 457, 462 (Pa. Super. 2003)). "Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." **Id.** (citation omitted).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

**In re Z.S.W.**, 946 A.2d at 730 (quoting **In re Adoption of Charles E.D.M.**, 708 A.2d 88, 92 (Pa. 1998)).

With respect to Section 2511(b), this Court has stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." **Id.** (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the

particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Instantly, with respect to Section 2511(a)(1), the court credited the testimony of Ms. Jackson, the CUA caseworker, in finding Father "has flat out said since 2017 he is not doing anything as it pertains to this case. [Ms. Jackson's] testimony was that when [F]ather would on occasion, every three or four months, retrieve his mail from his mother's home, he would call her and say, why do you keep sending me this stuff." N.T., 2/11/21, at 27. The court concluded Father "has never addressed any of his single case plan objectives [and] has refused to do all of th[em] since 2017." ***Id.*** at 29. The court specifically found Father has not visited Child since the fall of 2017. ***Id.*** at 26.

The court's findings are supported by Ms. Jackson's testimony that she mailed Father his SCP objectives and he never complied with them. N.T., 2/11/21, at 14-15. Ms. Jackson testified, "Every now and then, three to four months, when [Father] would pick mail up [sent to the address he provided], he would call and say, [']I don't know why you keep sending stuff. . . .[']" ***Id.*** at 11-12. She testified:

> Q. So [Father has] never really been involved with this matter, and indicated he wasn't willing to do his objectives?
>
> A. Correct.

***Id.*** at 12.

Ms. Jackson testified that despite being the CUA caseworker from the inception of this case in June of 2017, she never knew where Father lived. *Id.* at 11. She stated Father "would not provide me with his actual address." *Id.* It was not until March 2020 that she learned Father's mailing address was the home of his mother. *Id.* Ms. Jackson also testified she made efforts to reach Father by calling his cell phone, but he did not respond. *Id.* at 12.

With respect to Father's parenting and anger management objectives, Ms. Jackson explained she made referrals, which were unsuccessful, to the Achieving Reunification Center (ARC) and CUA's Father Initiative Program. *Id.* at 12-13. Ms. Jackson stated that Father has not seen Child since 2017, never sent letters, cards, or gifts to Child, and has not otherwise attempted to communicate with Child. *Id.* at 14-15.

Consistent with the above evidence, we discern no abuse of discretion by the court in concluding Father, "by conduct continuing for a period of at least six months immediately preceding the filing of the petition … refused or failed to perform parental duties" as set forth in Section 2511(a)(1). In addition, our independent review of the certified record reveals no non-frivolous issues that would support Father's appeal from the termination decree.

We next review the court's finding that termination of Father's parental rights serves Child's developmental, emotional, and physical needs and welfare pursuant to Section 2511(b). We have explained:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, … the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Here, the court found that no parent-child relationship existed between Father and Child. N.T., 2/11/21, at 31. As the record contains no evidence of a parent-child bond, it was reasonable for the court to conclude that none existed. *In re K.Z.S.*, 946 A.2d at 762-763. The court further found that Child desired termination of Father's rights, stating Child "has not wanted to

visit with either [Father or Mother] for a very long time." N.T., 2/11/21, at 30-31. The court determined "there will not be any detrimental impact to terminating involuntarily the rights of [M]other or [F]ather." *Id.* at 31.

Again, Ms. Jackson's testimony supports the court's findings. Child is in a pre-adoptive kinship foster home with a maternal cousin and her husband; Ms. Jackson testified Child "is doing amazing there." N.T., 1/6/21, at 23. Ms. Jackson stated Child "considers that his home." *Id.* Child was in third grade at the time of the hearing, and "is an excellent student." *Id.* at 24. Ms. Jackson explained:

> [Child] has succeeded so well with this [kinship foster] family where even the school recognizes the major difference that has happened over the years with [him] being with this family. He used to have to be in all these (inaudible), TSS and Silver Springs, and mobile therapists, and they discharged him. He . . . no longer needs those services. He is incredibly smart. He's getting excellent grades. He's like the little success story, and he's done it . . . on his own but with the support of this family.

N.T., 2/11/21, at 20.

Ms. Jackson testified that she spoke with Child "at length on the 31st of December [of 2020]. And he is very much excited about being adopted." N.T., 1/6/21, at 24-25. Child's legal counsel also stated that Child "did express his desire to be adopted" when she saw him "prior to the last court date," *i.e.*, on January 6, 2021. N.T., 2/11/21, at 24. Accordingly, we discern no abuse of discretion by the court in finding termination was warranted under Section 2511(b).

Given our disposition concerning termination, Father's appeal from the goal change order is moot. ***See In the Interest of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020) (citing ***In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002)) ("[E]ven if Father had not waived his goal change claim, it would be moot in light of our decision to affirm the court's termination decrees.").

However, even if not moot, we would not find any error or non-frivolous issues as to the goal change in this case. We review such decisions for an abuse of discretion. ***In re R.M.G.***, 997 A.2d 339, 345 (Pa. Super. 2010) (citation omitted). We have explained:

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

***In re A.B.***, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011) (citations and quotation marks omitted).

The evidence described above supports the court's decision to change Child's permanency goal from reunification to adoption. Father had not complied with any of his SCP objectives and had not seen Child since 2017.

- 15 -

Child had been in placement for more than three years and desired adoption. Therefore, based on our independent review of the certified record, we would not find any non-frivolous issues to support Father's appeal from the goal change order.

Accordingly, we grant Counsel's petition to withdraw from representation, affirm the decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), and dismiss as moot the appeal from the order changing Child's permanency goal to adoption.

Counsel's petition to withdraw granted. Decree affirmed. Appeal from goal change order dismissed.

Judge Colins joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/2021